UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:98-cr-00114-KJM |
| Plaintiff, | ORDER |
| v. | |
| D'Angelo Dominico Davis, | |
| Defendant. | |

Defendant D'Angelo Dominico Davis renews his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) in light of the coronavirus (COVID-19) pandemic, asserting the same grounds addressed in his prior motion, which the court denied without prejudice for failure to exhaust administrative remedies. Mr. Davis contends exhaustion is now satisfied. Renewed Mot., ECF No. 419; Prior Order, ECF No. 414.[1] The government rests on its prior opposition to Mr. Davis's motion. Opp'n, ECF No. 412. Excluding its previous arguments regarding exhaustion, the government contends Mr. Davis's health conditions are not "extraordinary and compelling" reasons for his early release, and the circumstances of his crimes make him a continuing danger to the community. *Id.* at 24–28. Mr. Davis has filed a reply. Reply, ECF No.

---

[1] While Mr. Davis's motion is framed as a motion for reconsideration, this court construes it as a renewal of his motion for compassionate release, and declines to apply the standard for reconsideration.

1

421. Since filing his reply, Mr. Davis has filed two status reports, one reporting on the advance of COVID-19 at his correctional facility, and most recently informing the court that as of early December 2020 he had contracted COVID-19. ECF Nos. 422, 423. With his most recent filing, Mr. Davis seeks to file under seal medical records. After careful consideration of the parties' briefing, including Mr. Davis's supplemental filings, the court **grants** the motion to seal and **denies** the motion.

I.    SEALING

Mr. Davis has filed a request to seal exhibit A attached to his status update filed December 9, 2020. Mot. to Seal, ECF No. 424. The court has considered the factors set forth in *Oregonian Publishing Co. v. U.S. District Court for the District of Oregon*, 920 F.2d 1462 (9th Cir. 1990) ("(1) closure serves a compelling interest; (2) there is a substantial possibility that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives that would adequately protect the compelling interest.") (citing *Press-Enterprise Co. v. Superior Court of California for Riverside Cnty.*, 478 U.S. 1, at 13–14 (1986)). A subject of medical records has a strong interest in the records' confidentiality, which, in this case, outweighs the public's interest in access. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *see also United States v. Maddawalaabuu Dadi*, No. CR18-0283, 2020 WL 5982007, at *1 (W.D. Wash. Oct. 8, 2020). Accordingly, the motion to seal is **granted**.

II.   BACKGROUND

On September 27, 2002, after a fourteen-day jury trial, a jury found Mr. Davis guilty on eight counts of various offenses related to his participation in armed bank and credit union robberies. *See* Judgment & Commitment ("J&C"), ECF No. 166. The previously assigned district judge sentenced Davis to 968 months' imprisonment and 60 months' supervised release to follow, and also ordered him to pay $65,940.30 in restitution and an $800.00 statutory assessment. *Id.* at 3–6. After a series of appeals, Davis's sentence was reduced to 728 months imprisonment and a $700.00 assessment, with restitution unchanged. *See* Second Am. J&C, ECF No. 248. At the time of this order, Mr. Davis has served 248 months of his 728-month term, approximately 34 percent of his imprisonment sentence. *See* Original Opp'n at 12.

2

Davis is currently serving his sentence at the U. S. Medical Center for Federal Prisoners at Springfield, Missouri ("Springfield FMC"). Original Mot. at 4. The Bureau of Prisons reports there are currently 96 inmates and 21 staff members with active cases of COVID-19 in the facility, with a total of 383 positive tests since the beginning of the pandemic.[2]

On January 8, 2020, Davis submitted a request for compassionate release to the warden at Springfield FMC based on his "illness/critically ill condition," principally his "stage 4 to 5 kidney disease." *Id.* On January 14, 2020, the warden denied Davis's request. *Id.* at 5. On June 23, 2020, this court denied Davis's first motion. *See generally* Original Order. In making the January 8, 2020 request, Mr. Davis did not rely on the COVID-19 pandemic as the basis for the request; therefore he could not satisfy the exhaustion requirement for his first motion submitted to this court, which did rely on the pandemic. *Id.* at 3–4. After the court denied the original motion, Davis filed a second request with the Bureau of Prisons, which was denied on June 30, 2020. Renewed Mot. Ex. A., ECF No. 419-1. At this point the government does not dispute exhaustion, and the court finds Mr. Davis has in fact exhausted administrative remedies such that it may proceed to analyze the merits of his motion. *See* 18 U.S.C. § 3582(c)(1)(A)(i).[3]

### III.  LEGAL STANDARD

Following administrative exhaustion, a district court engages in a two-step process in determining whether to grant compassionate release. First, it must consider the familiar 18 U.S.C. § 3553(a) factors it takes account of at the original sentencing, to the extent they remain applicable at the time a motion is brought, including whether defendant poses an ongoing danger

---

[2] https://www.bop.gov/coronavirus/ (accessed Dec. 27, 2020).

[3] 18 U.S.C. § 3582(c)(1)(A)(i):

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
  extraordinary and compelling reasons warrant such a reduction. . .

to the community. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant such a reduction." *Id*. 18 U.S.C. § 3582(c)(1)(A)(i).[4]

### A. Extraordinary and Compelling Reasons

According to his medical records, Mr. Davis is suffering from stage 4 kidney disease and hypertension. Original Mot. Ex. F, ECF No. 409-1. In January 2019, well before the coronavirus pandemic began its steady march, a BOP physician completed a form indicating Mr. Davis's condition means he has a "Serious Illness," defined as "a terminal illness or other medical condition that is likely to be progressive, deteriorating and/or causing a clinical state that death would not be unexpected but would not necessarily be imminent." *Id.* Ex. D. In his original motion, Mr. Davis claimed his comorbidities placed him at an increased risk of complications from COVID-19, if he were to contract it. *Id.* at 22–24. Comorbidities can in fact increase the risk of severe illness from coronavirus so as to constitute extraordinary and compelling reasons, and support a motion for compassionate release. *See, e.g., United States v. Terraciano*, No. 2:17-00187, 2020 WL 5878284, at *5 (E.D. Cal. Oct. 2, 2020). Chronic kidney disease "at any stage increases [the] risk for severe illness from COVID-19" according to the CDC and hypertension "might" increase one's risk as well.[5] At least one other court has found the combination of conditions from which Mr. Davis suffers sufficient grounds for granting compassionate release, in reviewing the totality of the record in that case. *See United States v. Johnson*, No. CR 4:16-577-BHH-1, 2020 WL 4501513, at *5 (D.S.C. Aug. 5, 2020) (granting motion for compassionate release for inmate suffering from hypertension and chronic kidney disease, finding chronic kidney disease at "any stage is . . . a serious . . . medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"). According to his medical records, Mr. Davis's

---

[4] This court has previously found U.S.S.G. § 1B1.13(1)(C)(i) is not binding after the passage of the First Step Act but considers it guidance in deciding COVID-19 compassionate release cases. *See United States v. Bradley*, No. 2:14-cr-00293-KJM, 2020 WL 3802794, at *2–3 (E.D. Cal. July 7, 2020).

[5] Centers for Disease Control, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html) (accessed November 16, 2020).

4

1  conditions have been treated pharmaceutically in the past; he represents that he recently has
2  begun peritoneal dialysis, with a catheter inserted into his abdomen.  *See* Second Status Report  at
3  1 & n.1, ECF No. 423; *id.* Ex. A at 17.[6]  His medical records indicate that, while he has now
4  contracted COVID-19, he has experienced mild symptoms from this condition at most.  *Id.* Ex. A
5  at 1-2.

6        As a general matter, the CDC recommends all persons, whether or not they have
7  preexisting conditions, protect themselves from COVID-19, by, *inter alia*: "keep[ing] space
8  between yourself and others," "stay[ing] home," and "[c]lean[ing] your hands often by washing
9  with soap and water or using an alcohol-based sanitizer."[7]  The recommendations emphasize that
10 "[k]eeping distance from others is especially important for people who are at higher risk of
11 getting very sick."  *Id.*  All of these recommendations are of course more difficult to follow when
12 one is housed in a penal facility.  *See Esparza*, 2020 WL 1696084, at *2 ("Even in the best run
13 prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for
14 preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and
15 keeping a distance of at least six feet from others.").  Medical records indicate Mr. Davis
16 contracted COVID-19 on or about December 7, 2020, and denied experiencing symptoms.  *See*
17 Second Status Report Ex. A at 1.  However, four days prior he had a "headache, mild cough, and
18 [] an elevated temperature."  *Id.*  The court does not assume, now that Mr. Davis has been
19 infected with COVID-19, that he is not at risk of reinfection.[8]  *See, e.g., United States v. Keys*,
20 No. 2:16-00234, 2020 WL 6700412, at *3 (E.D. Cal. Nov. 13, 2020) ("While a CDC
21 representative recently has suggested that based on current evidence . . . reinfections are likely
22 uncommon within 3 months, this observation is not so conclusive so as to provide clarity

---

[6] In citing to Exhibit A, approved for sealing by this order, the court cites to the page numbers appearing in the lower right hand corner.

[7] Centers for Disease Control, How to Protect Yourself & Others (https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/what-you-can-do.html) (last updated September 11, 2020) (accessed Nov. 16, 2020).

[8] "In general, reinfection means a person was infected (got sick) once, recovered, and then later became infected again.  Based on what we know from similar viruses, some reinfections are expected."  COVID-19 Reinfection, CDC (https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html) (accessed Dec. 27, 2020).

regarding whether someone who has been infected is immune for any period of time, no matter how brief.").

Moreover, Mr. Davis's current housing at Springfield FMC places him at risk of contracting the coronavirus or, now, of reinfection. Mot. at 4. The Bureau of Prisons statistics reviewed above mean that approximately 11 percent of the inmate population at Springfield currently is infected, and approximately 47 percent have already contracted the virus.[9] Previous courts have considered a significantly less severe situation at the same facility to support a finding of extraordinary and compelling reasons. *See United States v. Tuitele*, No. 13-593, 2020 WL 5167527, at *3 (D. Hawaii Aug. 31, 2020) (chronic kidney disease, COPD, and obesity were extraordinary and compelling reasons even when no inmates and 2 staff members had tested positive at FMC Springfield).

Taking account of all of the above, the court finds Mr. Davis's medical conditions, considered in light of the facility where he is housed, do provide extraordinary and compelling reasons weighing in favor of compassionate release. These considerations, however, are outweighed by the danger Mr. Davis would pose to the community if released, as explained below.

### B. Danger to the Community

The Sentencing Guidelines advise "the court should consider the sentencing factors set forth in 18 U.S.C § 3553(a) when deciding a motion for compassionate release, and the [c]ourt should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Esparza*, 451 F. Supp. 1194, 1196 (D. Idaho, 2020) (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). After his resentencing, Mr. Davis stands convicted of three counts of armed credit union robbery, 18 U.S.C. § 2113(a), (d), one count of armed bank robbery, 18 U.S.C. § 2113(a), (d), and three counts of use of a firearm, 18 U.S.C. § 924(c)(1). *See* ECF No. 248. In light of the statutory text itself, a conviction for bank and/or credit union robbery under § 2113(a) requires a finding that defendant used "force

---

[9] https://www.bop.gov/coronavirus/ (accessed Dec. 27, 2020); MCFP Springfield Facility Information, (https://www.bop.gov/locations/institutions/spg/) (accessed Dec. 27, 2020).

1  and violence, or [] intimidation"; § 2113(d) requires a finding he "assault[ed] any person, or put[]
2  in jeopardy the life of any person by the use of a dangerous weapon or device."

3  "It is now settled law in the Ninth Circuit that armed bank robbery categorically qualifies
4  as a crime of violence." *United States v. Williams*, No. 98-cr-309, 2020 WL 3914759, at *14 (D.
5  Nevada July 10, 2020) (citing *United States v. Watson*, 881 F.3d 782 (9th Cir. 2018) (finding
6  bank robbery remained crime of violence as defined by Armed Career Criminals Act ("ACCA")
7  after the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), striking
8  down ACCA's residual clause). Mr. Davis's use of a firearm in committing his conviction
9  offenses compounds the court's concern he is a danger to the community. *Compare United States*
10 *v. Capito*, No. 10-08050, 2020 WL 5846608 (D. Ariz. Oct. 1, 2020) (compassionate release
11 motion denied for defendant convicted of bank robbery with firearm) *with United States v. Dana*,
12 467 F. Supp. 3d 962 (D. Or. 2020) (compassionate release granted to defendant convicted of
13 unarmed bank robbery). His violent offenses cut strongly against granting his motion.

14 While conviction offenses are not necessarily the deciding factor in resolving a request for
15 compassionate release, other information before the court does not offset Mr. Davis's
16 dangerousness to the community if released. On the one hand, since his incarceration, Mr. Davis
17 has completed nearly 100 education courses, which is laudable. *See, e.g.,* Original Mot. Ex. C at
18 1–2, ECF No. 409-1; *id.* Ex. B (defendant's declaration). On the other hand, a review of BOP
19 records showed a pattern of misconduct resulting in at 15 least different disciplinary actions as of
20 June 2020, with the last violation occurring recently, in 2019. *See* Original Mot. Ex. A at 2–3.
21 Mr. Davis is flagged as "Violent Risk Level: High" by the BOP and is considered to have current
22 gang affiliations. *Id.* at 3.

23 Mr. Davis has not demonstrated he will not pose a danger to the community if he is
24 granted early compassionate release. His proposed release plan, whereby he would reside with
25 his sister and work at a nearby thrift store owned by a childhood friend, does not alter the court's
26 conclusion. *Id*. Ex. B ¶¶ 6-8; Exs. J, K.
27 /////

7

## IV. CONCLUSION

Mr. Davis's renewed motion for compassionate release is **denied**. Mr. Davis's motion to seal is **granted**.

This order resolves ECF Nos. 419, 424.

IT IS SO ORDERED.

DATED: December 28, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE